C. S. HOLDEN v. FRANK R. SPIER *et al., as Administrators, Etc.*

No. 12,128. (70 Pac. 348.)

SYLLABUS BY THE COURT.

1. PRACTICE, PROBATE COURT—*Distribution of Estates.* The probate court, having jurisdiction to make settlement and distribution of a decedent's estate, may determine the share of each distributee, and to that end can inquire into and determine the indebtedness of the distributee to the estate and order a deduction of the same from his share.

2. ———— *Set-off—Lapse of Time Immaterial.* The equitable right to retain the debt of a distributee from his distributive share is not affected by the lapse of time, and the deduction of the debt should be made, although an action to recover the same would be barred by the statute of limitations.

3. ACCOUNTS—*No Particular Form Necessary.* No particular
form of keeping accounts is prescribed by law in order to make
them admissible in evidence, and their admissibility is to be de-
termined from their appearance and character, the employment
and education of the one who kept them, the manner in which
other and similar accounts were entered in the book, and the cir-
cumstances of the case.

Error from Saline district court; R. F. THOMPSON,
judge.   Opinion filed October 11, 1902.   Affirmed.

*Benson & Harris*, and *H. A. Richards*, for plaintiff in
error.

*Z. C. Millikin*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, J. : This was a proceeding instituted in
the probate court of Saline county, in the matter of
the settlement and distribution of the estate of Nathan-
iel Head, deceased.   C. S. Holden was an heir at law
of Nathaniel Head, and was entitled to a share of the
estate, which was in course of administration.   A par-
tial distribution of the funds belonging to the estate
had been ordered by the probate court, and before
making distribution the administrators applied to the
court for a citation requiring Holden to appear and
show cause why certain sums due from him to the es-
tate on account and on a promissory note should not
be retained from his distributive share, and that the
court should determine and direct how much should
be paid to Holden out of the funds of the estate.   In
response to the citation, he appeared and alleged that
he had no knowledge of any indebtedness on account;
that the note mentioned had been paid at maturity;
and, further, that if anything had been due from him
to the estate on either accounts or note, it was barred
by the statute of limitations.   He asked the court to

order the administrators to make payment of his distributive share without deductions on account of his alleged indebtedness to the estate.

Upon a hearing the probate court held that he was indebted to the estate and that the amount of the same should be retained out of his distributive share, and ordered distribution upon that basis. He appealed to the district court, and when he reached that tribunal he asked that the proceedings be dismissed because the probate court was without jurisdiction in such cases. The application was denied, and the court, upon the proof offered, found that Holden was indebted to the estate upon the account and the note in the sum of $902.44, and that the amount should be deemed a part of the fund for the distribution, and retained from the share which the defendant would otherwise be entitled to receive.

Several grounds of error are alleged here, and the first is that the probate court had no jurisdiction to 1. Jurisdiction of probate court. determine the alleged indebtedness of Holden to the estate, nor to render judgments on such ordinary liabilities against living persons. This cannot be regarded as an action by the administrators to recover money from Holden, nor to obtain a judgment in favor of the estate against him. It was within the power of the probate court to ascertain the extent of the estate and in whose hands the funds or assets of the estate were held; and, also, to make such distribution as the law requires. Holden was claiming a share of the estate, and it devolved on the probate court to determine the amount of this share, and whether any portion of it was already in his hands. Before distribution could be made, it was necessary to ascertain the full amount of the fund to be distributed, and this could not be done until it was

determined how much of the fund Holden held. It was said in *Proctor v. Dicklow*, 57 Kan. 125, 45 Pac. 88 :

"That court having jurisdiction to make distribution of the estate, it follows as a necessary incident to its jurisdiction that it can determine who is entitled to the funds, and all questions necessary to a proper distribution of the estate." (See, also, *Keith v. Guthrie*, 59 Kan. 200, 52 Pac. 435 ; *Lietman's Executor v. Lietman*, 149 Mo. 112, 50 S. W. 307, 73 Am. St. Rep. 374 ; Woern. Adm. § 142.)

Any one interested in the distribution can invoke this jurisdiction, and, therefore, it was competent for the administrators to apply to the probate court to have determined how much of Holden's share remained to be paid, and as an incident it must decide the extent of his indebtedness to the estate. It is to be noted that a judgment for the amount of the indebtedness against him was not asked, but it was rather to determine what amount of the fund should be paid to him ; and it may, be further remarked that he appeared in the probate court without questioning its jurisdiction, and asked for a decision as to the amount of the share to which he was entitled.

Exception was taken to the admission of a book of accounts purporting to have been kept by Head, and which contained an account with Holden. It was found among the effects of the deceased two days after his death. It was in his handwriting and contained numerous accounts of others than Holden, and apparently it was the only book of accounts kept by him. The account in question was under the name of Charles S. Holden, and was constituted of entries of debit and credit running over a considerable period of time, and while not as formal or regular as would have been kept by a merchant, we find nothing on its face to throw discredit

*3. Form of accounts immaterial.*

upon it.   No particular form of keeping accounts is prescribed by law in order to make them admissible in evidence, and the question of the competency of accounts is to be determined from their appearance and character, the employment and education of the one who keeps them, the manner in which other and similar accounts were entered, and the circumstances of the case.   The same degree of formality and regularity is certainly not expected of a man like Head, who was an aged farmer of limited education, as would be of an expert accountant, but, although the account was not in line with the best methods of bookkeeping, we think it was sufficiently formal and intelligible, and sufficiently identified to make it admissible.

Holden set up the statute of limitations as a bar to any reduction of his share because of indebtedness to Head or his estate.   The indebtedness, or at least a portion of it, would have been barred if an ordinary action to recover it had been brought.   Is the statute applicable when the question is whether the indebtedness of an heir to an estate shall be retained out of his distributive share?   We think the bar of the statute cannot be interposed in such cases.   The theory of the law, and it is an equitable one, is that the indebtedness of an heir of the estate should be regarded as assets of the estate already in his hands, and that his legacy or share is to that extent satisfied.   It would be grossly inequitable to allow an heir to obtain his full share of an estate while he was withholding a portion of the same that was already in his hands.   It has been said that "it is against conscience that he should receive anything out of the fund without deducting therefrom the amount of that fund which is already

2. Statute of limitations inapplicable.

in his hands, as a debtor to the estate." This is not a mere question of set-off, but of equitable lien and right of retainer. (*Smith v. Kearney*, 2 Barb. Ch. 548.) Our statute of limitations is one of repose and does not raise a presumption of payment, as in some of the states. The lapse of time does not extinguish an obligation nor satisfy a debt, but the statute simply bars the remedy and prevents the use of the obligation or debt as a cause of action of affirmative defense. Some of the courts have held that the statute of limitations applies, and that there can be no deduction from a distributee's share on account of an indebtedness which is barred. (Milne's Appeal, 99 Pa. St. 483; *Allen v. Edwards*, 136 Mass. 138.) But the better, and probably the greater number of, authorities hold to the contrary view.

In *Courtenay v. Williams*, 3 Hare's Ch. 539, the chancellor said that the proper answer to be made to a legatee who asks for the payment of his legacy without first paying his debt, even in a case where the remedy at law for the collection of his debt was barred by the statute of limitations, is: "You ask for a portion of the assets of the testator, but you are yourself a debtor to the testator's estate, and his assets are diminished *pro tanto* by your default. It is against conscience that you should take anything out of the estate until you have made good what you owe it."

The supreme court of Indiana in a well-considered case adopted the doctrine that a distributee is not entitled to receive his share while he retains in his own hands a part of the fund out of which his own and the shares of other distributees are to be paid, and that his indebtedness to the estate may be deducted, although a recovery upon the same would be barred

27—65 KAN.

by the statute of limitations. It was there said, in speaking of the right of retainer:

"This right is not one of set-off, but is founded on the principle that the administrator or executor has an equitable lien on the share of the distributee or legatee until the latter has discharged the obligation which he owes to the estate. The heir or legatee, as the authorities affirm, is not, in accordance with justice or good conscience, entitled to be awarded and receive his share as long as he is a debtor to the estate and thereby has in his own hands a part of the fund upon which the payment of his own share and the shares of others depend. To allow a distributee to receive his share of the fund in the hands of the administrator for distribution, while the former is in default in the payment and discharge of his own obligations to the estate, would serve to diminish the fund, and result, perhaps, to the prejudice of others. By permitting the distributee to receive his share, while he retains a part of the fund in his own hands, out of which his share ought to be paid, might, and frequently would, result in awarding to him a portion of the fund greater than that received by other equally entitled distributees. These principles, in reason, do and must apply when the recovery of the debt which the distributee owes to the estate is barred by the statute of limitation. The statute of limitation is one of repose, and is only a bar to the remedy, and not to the debt itself, simply leaving it unpaid without any legal remedy on the part of the creditor to enforce its payment by suit, in the event the debtor relies on the statute as a defense. Measured, however, by a moral standard, and one in accord with good conscience, the debtor is still under an obligation to pay his debt, although a recovery thereon under the law may be barred by the lapse of time." (*Holmes v. McPheeters*, Ind., 49 N. E. 450.)

In Missouri, where the statute is similar to our own, it was said:

"It matters not by what name the proceeding is

called, whether retainer, advancement, set-off, or
assets in the hands of the legatee, the practical re-
sult is the same, and it rests upon wholesome prin-
ciples of right and justice which can be administered
in probate courts without the aid of a court of con-
science.   The reason, necessity and wisdom of the
rule is strikingly illustrated in this case, where an in-
solvent non-resident legatee seeks to diminish the dis-
tributive share of others by claiming a part of the
estate, while he owes the estate twice ·as much as his
legacy amounts to.   .   .   .   It is wholly immaterial
whether the debt of the legatee is barred by limitation
or not, the right to write it off against the legacy re-
mains unimpaired by any lapse of time.''   (*Lietman's
Executor v. Lietman*, supra.   See, also, *Tinkham v.
Smith*, 56 Vt. 187 ; *Armour v. Kendall*, 15 R. I. 193,
2 Atl. 311 ; *Rogers v. Murdock*, 45 Hun, 30 ; *Matter of
Bogart*, 28 id. 466 ; *Wilson v. Kelly*, 16 S. C. 216 ;
*Garrett v. Pierson*, 29 Iowa, 304 ; *Succession of Bougere,*
28 La. Ann. 743 ; *Coates v. Coates*, 33 Beav. 249 ; *Fiscus
et al. v. Fiscus*, 127 Ind. 283, 26 N. E. 831 ; 2 Woern.
Adm. §564 ; *Jeffs v. Wood*, 2 P. Wms. 128.)

We find no error in the record, and, therefore, the
judgment of the district court will be affirmed.

All the Justices concurring.